STATE ex rel. GEORGE ENGELHARD v. JACOB WEBER.[1]

December 15, 1905.

Nos. 14,457—(62).

**Sham Answer.**

A sham answer may be stricken out, where its falsity is clearly shown, even though interposed in the belief of its truth and in good faith.

**Naturalization of Aliens.**

A "court of record * * * having common-law jurisdiction," within the meaning of section 2165, R. S. U. S. 1878 [U. S. Comp. St. 1901, 1329] providing for the naturalization of aliens, is one having a judge, clerk, and seal, and whose powers are exercised according to the course of the common law; that is, a court wherein controversies are judicially determined after notice to the interested parties and opportunity given them to be heard.

**Foreign Judgment.**

When a court of record of another state has assumed jurisdiction of a controversy or proceeding, and pronounced judgment therein, it will be presumed in the courts of this state, upon the production of a certified copy of the judgment, authenticated as required by the act of Congress, that the court had jurisdiction of the subject-matter and authority to render the judgment.

**Same.**

The common pleas court of Meigs county, Ohio, a court having a judge, clerk, and seal, having entertained an application for the admission of an alien to citizenship in the United States, and ordered a judgment granting the same, it is presumed that the court was one of record exercising common-law jurisdiction, with authority to hear and determine the application.

[1] Reported in 105 N. W. 105.

**Entry of Judgment.**

A judgment of a court is the final determination and adjudication of a controversy or proceeding, and may, under the common-law procedure, be formally entered in a so-called judgment book, orally announced by the court, and reported in the minutes by the clerk, or in the form of an order signed by the presiding judge finally disposing of the case.

**Effect of Record.**

The record of that court, referred to in the opinion, *held* to constitute a judgment admitting to citizenship the person therein named.

**Right of Suffrage.**

The provisions of article 7, § 1, of our state constitution, as amended in 1895 (Laws 1895, p. 7, c. 3), limiting the right of suffrage, as respects naturalized citizens, to such as are admitted to citizenship three months preceding the election at which they tender their vote, is not in conflict with the fourteenth amendment of the federal constitution, which provides that no state shall enact or enforce any law abridging the privileges or immunities of citizens of the United States.

**Same.**

The right of suffrage was not conferred by the fourteenth amendment, but arises and exists under the constitution and laws of the several states.

Appeal by defendant from an order of the district court for Stearns county, Searle, J., striking out as sham and frivolous the answer of defendant to the information of relator, and directing a judgment of ouster. Affirmed.

*J. D. Sullivan* and *Calhoun & Bennett,* for appellant.

*Bruener & Klasen,* for respondent.

BROWN, J.

Proceedings in the nature of quo warranto to determine the right to the office of county commissioner of Stearns county. It appears from the record that relator was elected to the office of county commissioner of the Third district of Stearns county at the general election of 1900, and duly qualified and entered upon and continued in the discharge of the duties thereof during the following term of four years. Defendant was elected to the office at the general election of 1904, and on January 1, 1905, duly qualified and entered upon the discharge of his duties. Thereafter, on the theory that defendant was not a citizen of the United States qualified to vote or hold office at the time

of his election, and that his election was a nullity, relator, claiming the right to hold over by virtue of his prior incumbency (Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802), commenced this proceeding to oust him. The writ sets out the citizenship of relator, his prior election and qualification, the fact that defendant was not a citizen, and hence not eligible to the office, and other facts upon which his prayer for relief is founded. Defendant answered, expressly denying the citizenship of relator, and affirmatively alleging that he was not and never had been a citizen of the United States, and that by reason thereof he was a usurper in the office, with no lawful right to hold or retain the same. It also alleged that defendant was in fact a citizen, and that he holds and claims to hold the office by virtue of his election thereto in November, 1904. The answer also contains a general denial and was duly verified. Relator moved in the court below, upon affidavits, to strike out the answer as sham and frivolous and for judgment as prayed for in the writ, which motion was granted, and defendant appealed. This statement is sufficient for a general understanding of the issues in the case. Other facts will be mentioned in connection with the discussion of the particular questions presented.

1. The motion to strike out the answer was based upon the claim that it was sham and frivolous, and the question presented in this connection is whether the motion was properly granted on either ground. A sham answer is one that is false and untrue; the word "sham" being construed by the courts as synonymous with "false." A frivolous answer is one that does not, in any view of the facts pleaded, present a defense to the action. 20 Enc. Pl. & Pr. 11, et seq. The answer in this case is clearly not frivolous, for it in fact presents a complete defense to the action, and we have only to inquire whether it is sham. The right of a court to strike out a sham answer, even though verified, is firmly settled by the decisions of this court. C. N. Nelson Lumber Co. v. Richardson, 31 Minn. 267, 17 N. W. 388; Wheaton v. Briggs, 35 Minn. 470, 29 N. W. 170; Stevens v. McMillan, 37 Minn. 509, 35 N. W. 372; Van Loon v. Griffin, 34 Minn. 444, 26 N. W. 601. And though many of the cases, in defining a sham answer, state that it is one shown to be false and untrue, and which appears to have been interposed in bad faith or for the purpose of delay, we do not apprehend that the power of the court to strike out such an answer is limited to cases

where bad faith affirmatively appears. Our statutes, which provide for striking out sham and frivolous answers, make no reference to the good or bad faith with which they may have been interposed, but provide for striking the same out upon their falsity being clearly shown. Ordinarily bad faith will be presumed from the fact that the answer is false and untrue. But it is clear that the court has the power to strike out such an answer, even though in fact interposed in the belief of its truth and in good faith, in all cases where the falsity is clearly and unquestionably disclosed. The court will not, however, in any case where a fair doubt exists as to the truth or falsity of the answer, thus summarily dispose of the case, but will leave the parties to litigate the issues in the usual way.

The principal questions of fact presented by the writ and answer in this case are the citizenship of relator and the citizenship of defendant. All other facts necessary to the full determination of the controversy are either admitted or not controverted. There is no dispute respecting the facts going to prove the citizenship of defendant. He was admitted a citizen before the district court of Kandiyohi county, on October 28, 1904, about a week prior to the time of his election and the question whether he was eligible to the office at that time is one of law; so that if the legal conclusion from the undisputed fact just stated be adverse to defendant, and to the effect that because he was not a citizen at least three months prior to the election, he was ineligible to public office, the allegations of his answer that he was a citizen and entitled to vote and hold office at the time of his election are not true. The same may be said with reference to the status of relator. If the affidavits presented on the motion, which are not disputed by defendant, show that he became a citizen in the manner there stated, the allegations of the answer that he is not a citizen are not true. So the question whether the answer was properly stricken out narrows itself down to one of law, to be determined from the undisputed facts presented by the record. The suggestion of counsel for defendant that no opportunity was afforded him to present a counter showing in reference to the citizenship of relator is without special force. If he desired to controvert the affidavits of relator, and the time fixed for the hearing of the motion in the court below did not allow opportunity to produce necessary proof, an application for further time would certainly have

been granted by the court below. But it does not appear that any such application was made; on the contrary, it is apparent that the motion was submitted below upon the legal questions raised and in line with the arguments in this court.

2. We come, then, to the question whether the affidavits presented on the motion to strike out clearly show the citizenship of relator. The affidavits state that relator is the son of one Valentine Engelhard, who was by an order of the court of common pleas of Meigs county, Ohio, naturalized as a citizen of the United States on May 28, 1852, at which time relator was of the age of eleven years, by virtue of which relator claims that he then became and has since remained a citizen of the United States, entitled to all the rights, privileges, and immunities of such. In support of the affidavit that the relator's father thus became a citizen, a properly authenticated copy of the order admitting him was offered as a part of the moving papers. It is in the following language:

Court of Common Pleas, Meigs County, Ohio.
In the Matter of the Naturalization of Valentine Engelhard.
Pomeroy, Ohio, May Term, 1852.
Journal, Vol. 8, Page 380.
Certified Copy of Journal Entry.

Valentine Engelhard, an alien and native of Germany, a free white person, this day came into court and proved to the satisfaction of the court that he made in this court two years ago the requisite declaration of his intention to become a citizen of the United States, and he has resided in the United States for five years last past, that he has resided one year last past in the State of Ohio, and that during all that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; and thereupon the said Valentine Engelhard in open court here made solemn oath that he will support the constitution of the United States, and that he doth absolutely and entirely renounce and abjure all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty,

and particularly all allegiance and fidelity to Maximillian II, King of Germany, whose subject he was.

Whereupon it is ordered by the court that a certificate of naturalization be issued to him on payment of the costs of this application.

Several objections are made to the sufficiency of this record. The first, namely, that relator is not shown to be the son of the Valentine Engelhard who was admitted to citizenship by the Ohio court, is clearly not well taken. The affidavits on this subject are clear and unequivocal, and leave no room for controversy. They sufficiently show that the Valentine Engelhard admitted by the Ohio court was the father of relator. It is also contended that an alien can only be admitted to citizenship by a court of record exercising common-law jurisdiction, and by the formal entry of a judgment of admission; that it does not appear in the case at bar that the court of common pleas of Meigs county, Ohio, possessed the necessary power and authority; and that the certified copy of the record above quoted does not amount to a judgment conferring citizenship upon the applicant.

Section 2165, R. S. U. S. 1878 [U. S. Comp. St. 1901, 1329], provides the method and manner by which an alien may become a citizen of the United States. It requires the applicant to appear before a Circuit or District Court of the United States "or a court of record of any of the states having common-law jurisdiction," establish his residence and other facts entitling him to admission, and take the oath of allegiance. The act also provides that the proceedings upon such application shall be recorded by the clerk of the court before which they are had. It may be conceded that a judgment of a court admitting an alien to citizenship is essential, and that, if the record relied upon by relator to establish the admission of his father does not show a judgment, respondent's contention that the record is insufficient must be sustained. But we find no force to this contention. A judgment of a court is the final determination and adjudication of a controversy or proceeding, and may, under the common-law procedure, be formally entered in a so-called judgment book kept by the clerk, orally announced by the court, or in the form of an order signed by the presiding

judge finally disposing of the case. 18 Enc. Pl. & Pr. 429; 17 Am. & Eng. Enc. (2d Ed.) 768.

The record of the court now before us would indicate that the order admitting Engelhard, Sr., to citizenship was orally announced by the presiding judge and the fact recorded by the clerk in the minutes of the court. The record recites all the facts necessary to be shown, certifies that they were shown, and concludes with:

> Whereupon it is ordered by the court that a certificate of naturalization be issued to him on payment of the costs of this application.

This answers every purpose and amounted to a judgment admitting the applicant to citizenship. Spratt v. Spratt, 4 Pet. 393; 1 Black, Judg. 106; In re Coleman, 15 Blatch. 406, Fed. Cas. No. 2,980; Boyd v. Thayer, 143 U. S. 135, 12 Sup. Ct. 375; The Acorn, Fed. Cas. No. 29; Campbell v. Gordon, 6 Cranch, 176; State v. Hœflinger, 35 Wis. 393. In the last case cited the record of the proceedings admitting the alien to citizenship was substantially like the record in the case at bar, and the court held that it constituted a judgment, importing absolute verity.

3. It is also urged by defendant that it does not appear that the common pleas court of Meigs county, Ohio, had jurisdiction to entertain the proceedings, and that the relator should, in support of the motion to strike out the answer, have produced the constitution and laws of the state of Ohio showing the creation and defining the jurisdiction of that court. Counsel are in error in this contention. The act of Congress providing for the naturalization of aliens confers jurisdiction upon the courts of record of the several states having common-law jurisdiction to hear, determine, and grant applications of that kind. A court having common-law jurisdiction is one whose powers are exercised "according to the course of the common law," and the phrase "according to the course of the common law," as interpreted by text-writers and judges, means a judicial determination of a controversy after due notice to the interested parties and an opportunity given to be heard. 2 Words & Phrases, 1331. It is not necessary that the court, to possess common-law jurisdiction, within the meaning of the act of Congress, should be unlimited in power and authority. Indeed, we have few courts in this country where limitations as to jurisdiction do not

exist. Stahl v. Mitchell, 41 Minn. 325, 43 N. W. 385; 3 Current Law, 145; In re Dean, 83 Me. 489, 22 Atl. 385; United States v. Power, 14 Blatchf. 223, Fed. Cas. No. 16,080.

The Ohio court, having a judge, clerk, and seal, was a court of record, and its jurisdiction is presumed. The general rule on this subject it that, when a court of record—that is, a court having a judge, clerk, and seal—has assumed to exercise jurisdiction over the subject-matter of a controversy or proceeding, and has pronounced judgment therein, it will be presumed in all courts of other jurisdictions, upon the production of a certified copy of the judgment authenticated as required by the act of Congress, that the court had jurisdiction of the subject-matter of the proceeding and authority to render the judgment. 2 Black, Judg. 896, and cases cited; 13 Am. & Eng. Enc. (2d Ed.) 997; Gunn v. Peakes, 36 Minn. 177, 30 N. W. 466; Mills v. Stewart, 12 Ala. 90; Bogan v. Hamilton, 90 Ala. 454, 8 South. 186; Coughran v. Gilman, 81 Iowa, 442, 46 N. W. 1005. This presumption applies in the case at bar, for it appears that the court from which the record in question came was a court of record and presumptively of common-law jurisdiction.

In some of the states the courts have gone beyond the general presumption of jurisdiction and taken judicial notice of the constitution and laws of sister states creating their courts and defining their powers and jurisdiction. Dodge v. Coffin, 15 Kan. 277; Buffum v. Simpson, 5 Allen, 591; Shotwell v. Harrison, 22 Mich. 410; Monroe v. Eastman, 31 Mich. 283; Jarvis v. Robinson, 21 Wis. *524. In New York, the common pleas court of Ohio is presumed to be one of general jurisdiction. McCulloch v. Norwood, 36 N. Y. Super. Ct. 180. And a similar presumption exists in that state as to like courts in the state of Pennsylvania. Pringle v. Woolworth, 90 N. Y. 502. See also Bailey v. Martin, 119 Ind. 103, 21 N. E. 346; Specklemeyer v. Dailey, 23 Neb. 101, 36 N. W. 356; Nunn v. Sturges, 22 Ark. 389. But we need not adopt that view of the law, for the general presumption above referred to applies to the facts before us, and under it the common pleas court of Meigs county, Ohio, must be deemed a "court of record exercising common-law jurisdiction," within the meaning of the act of Congress, with full power and authority to admit aliens to citizenship of the United States, and its judgment is conclusive against

collateral attack. Of course, the presumption is not conclusive; but the burden to overcome it is upon him who calls the judgment in question. In the case at bar the burden was upon the defendant. He made no effort in that direction, and it becomes conclusive.

4. It is also urged by defendant that, having been admitted to citizenship prior to the time of his election, he was eligible to the office, and that the court below erred in ordering judgment to the contrary. It is insisted in this connection that the provisions of article 7, § 1, of our state constitution, as amended in 1895 (Laws 1895, p. 7, c. 3), limiting the right of suffrage, as respects naturalized citizens, to such as are admitted to citizenship three months preceding the election at which they tender their vote, is in conflict with the fourteenth amendment to the federal constitution, which provides that no state shall enact or enforce any law abridging the privileges or immunities of citizens of the United States, nor any law which shall deprive any citizen of life, liberty, or property without due process of law, or to deny to any person within its jurisdiction the equal protection of the laws. We do not concur in this contention.

The federal Supreme Court, in construing this amendment, has held that it does not confer the right of suffrage, nor affect the power of the states to enact such laws upon the subject of elections as they may deem for the best interests of the public. Whether the federal Congress may, under this or any other provision of the federal constitution, impose restrictions or limitations upon the right of suffrage, is not involved. Congress has never attempted to exercise that power, and the Supreme Court has uniformly sustained the laws of the several states relating to the subject. 10 Am. & Eng. Enc. (2d Ed.) 572; Van Valkenburg v. Brown, 43 Cal. 43; Minor v. Happersett, 21 Wall. 162; United States v. Cruikshank, 92 U. S. 542, 555; United States v. Reese, 92 U. S. 214; Strauder v. West Virginia, 100 U. S. 303. The right and privilege of holding office is a right arising under the constitution and the laws of the several states, and the citizen's right to vote at elections, whether for officers of the United States or state, exists by reason of the fact that he is a citizen and entitled to vote under the laws of the state in which he resides. United States v. Anthony, 11 Blatchf. 200, Fed. Cas. No. 14,459; Kinneen v. Wells, 144 Mass. 497, 11 N. E.

916; Corfield v. Coryell, 4 Wash. C. C. 371, Fed. Cas. No. 3,230; Ward v. Maryland, 12 Wall. 418; Paul v. Virginia, 8 Wall. 168.

From what has been said it necessarily follows that the allegations. of defendant's answer, both as respects the citizenship of relator and that of defendant, are in fact untrue, and, though it may have been interposed in good faith, its falsity is clear and undisputed, and was. properly stricken out. In view of the facts disclosed, it is apparent that a denial of the motion would merely delay a result unavoidable at: the end of the litigation.

Order affirmed.