[Civil No. 1868.  Filed January 4, 1922.]

[203 Pac. 328.]

# BANCO DE SONORA, a Mexican Corporation, Appellant, v. MARTIN MORALES, Jr., Appellee.

1. JUDGMENT—COURT PRESUMED TO HAVE HAD JURISDICTION IN ACTION ON ITS JUDGMENT IN OTHER STATE WHERE RECORD HAD BEEN DULY AUTHENTICATED.—In action on judgment of other state where record thereof has been duly authenticated under Revised Statutes of the United States, section 905, originally act of Congress May 26, 1790, it will be presumed, in the absence of proof to the contrary, and although the record may be silent or ambiguous on the point, that the court which rendered the judgment had jurisdiction.

2. JUDGMENT—RECORD OF JUDGMENT AGAINST A FOREIGN CORPORATION INADMISSIBLE . IN OTHER STATE, UNLESS IT SHOWS CORPORATION WAS DOING BUSINESS IN STATE WHERE RENDERED.—The record of a judgment of a court of one state against a foreign corporation will not be received as evidence in action thereon in other state, unless it shows on its face that the corporation was doing business in the state in which the judgment was rendered.

3. CORPORATIONS—TO BE AMENABLE TO SERVICE OF ' PROCESS THEREIN CORPORATION MUST BE TRANSACTING BUSINESS IN FOREIGN JURISDICTION.—To render a corporation amenable to service of process in a foreign jurisdiction, it must appear that the corporation is transacting business therein to such an extent as to subject it to the jurisdiction and laws thereof.

4. CORPORATIONS—SERVICE OF PROCESS ON FOREIGN JURISDICTION MUST BE ON AGENT REPRESENTING CORPORATION IN ITS BUSINESS.—In service of process on a foreign corporation, the person on whom process is served must be an agent of the corporation, representing it in the foreign jurisdiction in the transaction of its business.

5. JUDGMENT — AGAINST DULY SERVED FOREIGN CORPORATION DOING BUSINESS IN STATE ENTITLED TO FULL FAITH AND CREDIT IN OTHER STATE.—Judgment against a foreign corporation doing business in the state and maintaining an agent or agents therein, after service of process upon a proper agent, is entitled to full faith and credit in every other state of the union.

6. JUDGMENT—RECORD OF JUDGMENT OF OTHER STATE AGAINST FOREIGN CORPORATION HELD SUFFICIENT TO ENTITLE JUDGMENT TO FULL

Effect in other states of judgment confessed on warrant of attorney, notes, 20 Ann. Cas. 262; 3 L. R. A. (N. S.) 449.

FAITH AND CREDIT IN OTHER STATE.—Where the record of judgment of other state authenticated under Revised Statutes of the United States, section 905, contained petition alleging that the defendant foreign corporation was doing business in the state and that named person was the local agent of such corporation upon whom process might be served, and where the return of the sheriff showed service of process on such agent, the judgment was valid on its face, and entitled to full faith and credit in other state.

7. JUDGMENT—COURT OF OTHER STATE PRESUMED TO HAVE JURISDICTION OVER DEFENDANT IN ACTION ON ITS JUDGMENT.—In action on judgment of other state, the court will presume as a matter of comity and general law that the courts of other state would not exercise jurisdiction over the person of a defendant, unless jurisdiction was acquired under the laws of such state.

8. JUDGMENT—CONTRADICTION OF FOREIGN JUDGMENT RECITALS BY RECITALS IN RETURN OF SERVICE MUST BE EXPLICIT AND IRRECONCILABLE.—The contradiction of recitals in foreign judgment by recitals in return of process, to overthrow the judgment recitals, must be explicit and irreconcilable.

9. JUDGMENT—SUIT ON JUDGMENT OF OTHER STATE MAY SHOW COURT OF OTHER STATE TO HAVE HAD NO JURISDICTION.—In action on judgment of other state the defendant may, notwithstanding any allegation in the record itself to the contrary, plead and prove that the court of other state had no jurisdiction to render supposed judgment.

10. JUDGMENT—DEFENDANT, CLAIMING JUDGMENT OF OTHER STATE VOID FOR WANT OF JURISDICTION, HAD BURDEN OF PROOF.—In action on judgment of other state, the defendant, having alleged that court of other state had no jurisdiction, had burden of so proving.

11. APPEAL AND ERROR—TRIAL COURT'S FINDING GIVEN EFFECT BY SUPREME COURT, UNLESS UNSUPPORTED BY EVIDENCE.—Trial court's finding must be given effect by the Supreme Court, unless it is unsupported by the evidence.

12. JUDGMENT—EVIDENCE HELD TO SUPPORT FINDING THAT DEFENDANT FOREIGN CORPORATION WAS DOING BUSINESS IN OTHER STATE AT TIME OF SERVICE OF PROCESS.—In action on judgment of other state in which defendant foreign corporation claimed that it was not doing business in such other state at the time of suit therein, and that person upon whom process was served was not its agent, evidence *held* to support the finding that the defendant was doing business in such other state at the time of service of process, and that person upon whom process was served was its agent at such time.

13. EVIDENCE — TRIER OF FACT CANNOT ARBITRARILY REFUSE TO GIVE FORCE TO UNCONTRADICTED TESTIMONY.—The trier of fact in any

case may not arbitrarily refuse to give force or effect to uncontradicted testimony.

14. PLEADING — REFUSAL TO COMPEL PLAINTIFF TO ELECT BETWEEN CAUSE OF ACTION OF FOREIGN JUDGMENT AND ORIGINAL CAUSE OF ACTION HELD NOT ABUSE OF DISCRETION.—In action on judgment of another state, in which defendant claimed judgment was void for want of jurisdiction, action of court in permitting plaintiff to file amended complaint, containing additional cause of action for recovery of indebtedness on which the judgment had been rendered, and refusal to compel plaintiff to elect between such causes of action, *held* not abuse of discretion.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. W. A. O'Connor, Judge. Affirmed.

Messrs. Duffy & Purdum and Messrs. Armstrong, Lewis & Kramer, for Appellant.

Mr. Frank J. Barry, and Messrs. Winter, McBroom & Scott, for Appellee.

FLANIGAN, J.—The appellee Martin Morales, Jr., brought suit in the court below against Banco de Sonora, a Mexican corporation, appellant herein, to recover the sum of $5,210.50, with interest at six per cent from December 30, 1918, upon a judgment rendered against the bank in plaintiff's favor on the date mentioned, by the district court, sixty-fifth judicial district of El Paso county, Texas. To this complaint the bank answered by plea alleging that the judgment of the Texas court was void for lack of jurisdiction over the person of appellant. Thereupon an amended complaint was filed, setting forth an additional and second cause of action for recovery of the items of indebtedness upon which the judgment had been rendered, being: First, a certificate of deposit of date February 8, 1916, issued by the bank at El Paso, Texas, in the Spanish language, which translated into English reads:

"Certificate of Deposit No. 155.

"We hereby certify that Mr. Martin Morales, Jr., has deposited with us the amount of $5,948.25 (five thousand nine hundred forty-eight pesos and twenty-five cents), for a fixed term of one year reckoned from to-morrow, and consequently we will pay him the amount aforesaid, against delivery hereof, on the 8th day of February, 1917, with the understanding that this certificate bears no interest.

"El Paso, Texas, February 8, 1916.

"BANCO DE SONORA, CHIHUAHUA BRANCH,

"OTON·SARTORIUS, Counsel.

"L. ESCOBAR, Accountant."

—and, second, an alleged indebtedness of 735.36 Mexican pesos on checking account with the bank. · The judgment of the Texas court was for the equivalent in American money of said sums at the time of the rendition of the judgment, and the court below was asked to render judgment on the second cause of action upon a similar calculation of the exchange values then existing.

The court below found all the facts alleged concerning the indebtedness in favor of plaintiff, but rendered judgment for the debt due on the Texas judgment only, holding it to be valid and enforceable in this state *in personam* against appellant. It would therefore appear that the second cause of action and all defenses made thereto had been eliminated from the case, and should require no further consideration. This we think is true, but because of the attack made upon the complaint, proceedings, and judgment upon the grounds that the two causes of action were improperly included in one complaint, and because the court did not compel an election by plaintiff between these causes of action, we later set forth our precise holding as to such contentions and the reasons for such holding.

In his petition filed in the Texas court the plaintiff alleged, in substance, that he was a resident of El Paso county, Texas; that defendant was a banking corporation, formerly existing and doing business under the laws of the state of Chihuahua, in the republic of Mexico, "but is at present located and doing a banking business in the city of El Paso, county of El Paso, and state of Texas; that Oton Sartorius, who resides in El Paso county, Texas, is the local agent representing said defendant in El Paso county, Texas, on whom process may be served"; that the bank was indebted to him upon the items referred to, and prayed for judgment accordingly. Upon the petition so filed a citation was issued out of said court on October 11, 1918, and served, as appears by the sheriff's return, on the same day, on the Banco de Sonora—

"by delivering [it] to Oton Sartorius, 10/11/1918, 12:30 P. M., 402 Mills Building, El Paso, Texas. Is alleged to be local representative of said corporation in El Paso county, Texas."

The judgment was by default for want of answer, and was rendered on December 30, 1918, and after finding that—

"The defendant, though duly cited in the manner and for the length of time required by law, having failed to appear and answer herein, but wholly made default, no jury was demanded, but said cause was submitted to the court, and the court, having heard the pleadings and evidence and being duly advised in the premises," adjudged that the plaintiff do have and recover from the defendant the sum of $5,210.50 lawful money of the United States of America, with interest at six per cent from the date of the judgment.

It is not contended that the Texas court was without jurisdiction over the subject matter of the action, but it is asserted that neither the record of the pro-

ceedings nor the facts in evidence establish that at the time of the service of the citation the bank was doing business in the state, or that Sartorius was the local representative or agent of the bank upon whom process could be served, so as to subject the bank personally to the jurisdiction of the Texas court. In that connection the answer alleges that the bank at all times was a citizen of the republic of Mexico, and was only temporarily in the state of Texas; that prior to 1913 it had its banking offices and conducted a banking business in Mexico; that in 1913, because of a revolution and condition of civil war in that country, it closed its banking offices there, and fled therefrom, and brought into the states of Texas and Arizona a considerable part of the assets of the company, including its records and papers; that later it returned to Mexico, and at the time suit was brought in the court below had ceased for several years to maintain any agent or representative in Texas, and that any of its officers and directors now in the United States were merely temporarily sojourning here; "that for some time the said defendant corporation conducted a temporary office in Arizona, and had one of its agents in El Paso, Texas"; that on February 8, 1915, the bank executed to plaintiff at El Paso, Texas, a certificate of deposit for 5,775 pesos Mexican money, signed for it by Sartorius, counsel, and Escobar, accountant, and payable one year after date; that this instrument evidenced an indebtedness it incurred to plaintiff in Chihuahua, Mexico, and was renewed by the certificate sued upon (hereinbefore set forth). It is then averred that none of its officers or agents were ever served with process in the Texas suit, and that no service was ever made upon it therein; that it never voluntarily appeared in the cause, and at the time of the suit it was not doing business in the state of Texas.

The questions which arise concerning the validity of the Texas judgment are: First, is the judgment valid on its face; and, if it is, then, second, was the judgment successfully impeached under the plea of its invalidity in fact, for lack of jurisdiction?

First. Is the judgment valid on its face? The record of the proceedings was proved and admitted in the court below, in conformity with the provisions of United States Revised Statutes, section 905, originally act of May 26, 1790 (1 Stat. 122), which reads:

"That the records and judicial proceedings of the courts of any state, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, Chief Justice, or presiding magistrate, as the case may be, that the said attestation is in due form. And the said records and judicial proceedings authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken."

—enacted by Congress pursuant to the authority given by section 1, article 4, Constitution of the United States, and to effectuate the purpose of the provision thereof that—

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."

It is not denied that the district court of El Paso county, Texas, which rendered the judgment, is a court of general jurisdiction and of record.

And "when a court of record in one of the states has assumed to exercise jurisdiction over a subject matter in controversy between parties resident in that state, and has pronounced judgment, and the record of such judgment, duly authenticated according to the act of Congress, is made the basis of an action in another state, the legal presumption, in the absence of

proof to the contrary, and although the record may be silent or ambiguous on the point, is in favor of the jurisdiction of the court rendering the judgment." Section 896, Black on Judgments (2d ed.).

See, also, *Mills & Co.* v. *Stewart,* 12 Ala. 90; *Nunn* v. *Sturges,* 22 Ark. 389; *Bailey* v. *Martin,* 119 Ind. 103, 21 N. E. 346; *American Mutual Life Ins. Co.* v. *Mason,* 159 Ind. 15, 64 N. E. 525; *Westervelt* v. *Jones,* 5 Kan. App. 35, 47 Pac. 322; *Coskery* v. *Wood,* 32 S. C. 416, 30 S. E. 475; *Cuykendall* v. *Doe,* 129 Iowa, 453, 113 Am. St. Rep. 472, 3 L. R. A. (N. S.) 449, 105 N. W. 698; *Carpenter* v. *Ritchie,* 2 Wash. 512, 26 Am. St. Rep. 877, 28 Pac. 380; *McMahon* v. *Eagle Life Assn.,* 169 Mass. 539, 61 Am. St. Rep. 306, 48 N. E. 339; *State* v. *Weber,* 96 Minn. 422, 113 Am. St. Rep. 630, 105 N. W. 490; *Van Norman* v. *Gordon,* 172 Mass. 576, 70 Am. St. Rep. 304, 44 L. R. A. 840, 53 N. E. 267.

But, as appellant contends, it is likewise well established that the courts of another state will not receive, as evidence of a foreign judgment, in a suit brought upon it, any record thereof which does not show on its face that the defendant, if a foreign corporation, was doing business in the state. *Henning* v. *Planters' Ins. Co.* (C. C.), 28 Fed. 440; *St. Clair* v. *Cox,* 106 U. S. 354, 27 L. Ed. 222, 1 Sup. Ct. Rep. 354 (see, also, Rose's U. S. Notes); *St. Louis Southwestern R. R. Co.* v. *Alexander,* 227 U. S. 218, Ann. Cas. 1915B, 77, 57 L. Ed. 486, 33 Sup. Ct. Rep. 245; Black on Judgments, § 910.

"In order to render a corporation amenable to service of process in a foreign jurisdiction, it must appear that the corporation is transacting business in that district to such an extent as to subject it to the jurisdiction and laws thereof." *St. Louis S. W. R. R. Co.* v. *Alexander, supra.*

And the person upon whom process is served must be an agent of the corporation representing it there

in the transaction of its business. *St. Clair* v. *Cox, supra.*

The rule thus enunciated is but a corrollary of the principle that—

"The tribunals of one state have no jurisdiction over the persons of other states unless found within their territorial limits; they cannot extend their process into other states, and any attempt of the kind would be treated in every other forum as an act of usurpation without any binding efficacy." *Galpin* v. *Page,* 18 Wall. 350, 21 L. Ed. 959 (see, also, Rose's U. S. Notes).

But where a corporation actually does business in a state other than that of its creation and original domicile, and maintains an agent or agents in that other state for such purpose, the record of a judgment obtained against it there, showing such facts and service of process upon a proper agent of the corporation, is entitled to full faith and credit in every other state of the Union. As was said in *St. Clair* v. *Cox, supra:*

"All that there is in the legal residence of a corporation in the state of its creation consists in the fact that by its laws the corporators are associated together and allowed to exercise as a body certain functions, with a right of succession in its members. Its officers and agents constitute all that is visible of its existence; and they may be authorized to act for it without as well as within the state. There would seem therefore to be no sound reason why, to the extent of their agency, they should not be equally deemed to represent it in the states for which they are respectively appointed, when it is called to legal responsibility for their transactions."

The petition filed in the Texas court alleged that the bank was doing business in El Paso county, Texas, and that Sartorius was its local agent there upon whom process might be served. It therefore appears

from the record of the proceedings that the presence of the corporation in the state of Texas, and the agency of Sartorius there, were made essential elements of the cause of action relied upon. If this were not the case, why were the allegations made? And, if made, why should we presume them not to have been proved? We are no more at liberty to suppose such allegations to have been disregarded than those concerning the indebtedness itself. In addition to the record so cogently manifesting what was required to be shown by plaintiff before he could have judgment, it is well established that if any presumption is to be indulged it must be that the court acted regularly and within its jurisdiction.

Irrespective of the constitutional mandate, and as a matter of comity and general laws, we should and will presume that the courts of Texas would not exercise jurisdiction over the person of a defendant, unless that jurisdiction was acquired by means known to the laws of Texas. *Nunn* v. *Sturges,* 22 Ark. 389, *supra.*

"The first point decided by any court, although it may not be in terms, is that the court has jurisdiction; otherwise it would not proceed to determine the rights of the parties." *Clary* v. *Hoagland,* 6 Cal. 685.

See, also, Van Fleet on Collateral Attack, section 62.

Assuming that the judgment might be void were the return of service to show affirmatively that service was not had, and that such return may be shown to contradict and overthrow the judgment recitals, no such contradiction exists here. The contradiction must in any case be explicit and irreconcilable. Black on Judgments, § 273. But in fact there is no contradiction whatever; the return followed the allegations of the petition, and we will presume that the court

23 Ariz.—17

found in accordance with the facts alleged in the petition. We hold, therefore, that the judgment was valid on its face. Our next inquiry is:

Second. Was the judgment successfully impeached by the testimony adduced under the plea of lack of jurisdiction over the person of defendant? Such a plea was proper, for neither the constitutional provision that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, nor the act of Congress referred to, prevents inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered. The defendant, sued upon such a judgment in another state, may, notwithstanding any allegation in the record itself to the contrary, plead and prove that the court had no jurisdiction to render the supposed judgment. He may show, if he can, "that its proceedings and judgment are void, and therefore the supposed record is, in truth, no record." *Thompson* v. *Whitman,* 18 Wall. 457, 21 L. Ed. 897; *Bigelow* v. *Old Dominion C. M. & S. Co.,* 225 U. S. 111, Ann. Cas. 1913E, 875, 56 L. Ed. 1009, 32 Sup. Ct. Rep. 641 (see, also, Rose's U. S. Notes).

The burden of proof to support these allegations was assumed by appellant, and rightly. *Merz* v. *Mehner,* 57 Wash. 324, 106 Pac. 1118; *Russell* v. *Butler* (Tex.), 47 S. W. 406; *Mills & Co.* v. *Stewart, supra; Loeb* v. *Waller,* 110 Ala. 487, 18 South. 268.

On the issue so made the court found against appellant. That finding must be given effect in this court, unless it is unsupported by the evidence. After a careful examination of the record we cannot say that it is not so supported. No useful purpose will be subserved by detailing all the evidence on the point, and we shall refer only to a few of the more salient facts in the testimony.

It is not contested that the bank was doing business in El Paso, and that Sartorius was its representative and agent there, up to August 8, 1918. The action was brought in the Texas court on October 11, 1918. After service upon him of the citation Sartorius wrote Max Mueller, formerly vice-president of the bank, and at the time of trial the representative of the board of directors, Mueller being then at Los Angeles, California, informing Mueller of the service, and stating that Sartorius had taken the advice of his attorneys to the effect that, as he was not the agent of the bank, an affidavit should be prepared and filed in the court, setting up that fact for presentation and hearing on November 4, 1918, at which time the court would hear evidence whether or not Sartorius was the agent. This letter also said that if the court should decide that Sartorius was not the agent, the case could not proceed until the plaintiff could find some agent of the company in the state upon whom service could be made. In reply to this letter Mueller wrote Sartorius that he had withdrawn from the active service of the bank, and was only acting in an advisory capacity thereto; that he had turned the letter over to Brauer, manager, who would write Sartorius officially on the subject. Brauer did in fact write to Sartorius, and, according to his testimony, referred to the subject matter in that letter. This letter, however, was not produced, nor was the precise nature of the statements therein made testified to by Brauer, nor did Brauer know whether the bank had paid the attorney's fees for Sartorius' representation in the suit. Mueller, although in court, did not testify; the testimony of Sartorius was introduced in a short deposition. The cross-examination therein developed that Sartorius had testified on the hearing in El Paso on November 4, 1918, on an *amicus curiae* suggestion or pleading.

A letter of August 8, 1918, from Brauer to Sartorius in El Paso was introduced in the testimony of Brauer, and was to the effect that the former wished to have discontinued at once the provisional office of the bank in El Paso, and that Sartorius was not to consider himself as in any way longer connected with the bank. Morales, the plaintiff, testified, however, that about the 1st of October he had seen Sartorius in an office in the Mills Building, in El Paso, and that the latter had informed him (Morales) that—

"The bank would not accept my offer, and he [Sartorius] was satisfied he could not do anything else for me," the conversation relating to the indebtedness in suit.

About a week later the suit was brought. Brauer testified that he had corresponded with Sartorius since August 8, 1918, at El Paso, Texas, with reference to the business of the bank, but these letters, which presumably would show what this business was and its extent, were not produced, although the testimony disclosed that they were in the custody of the bank. From what has been said it is evident that the contract evidenced by the certificate of deposit was made in El Paso, originally and by renewal.

While it is not true that the trier of fact in any case may arbitrarily refuse to give force or effect to uncontradicted testimony, we cannot say that the judge of the court below was required to accept at its face value, under all the circumstances, the evidence adduced to show that Sartorius was no longer the agent of the bank, or that the bank was not doing business in El Paso at the time of the service of citation. We therefore conclude that the finding of the court to the effect that the agency continued to exist, and that the bank continued to do business in El Paso after August 8, 1918, is not without support in the tes-

timony, and that the judgment of the Texas court is valid.

We are asked to reverse the judgment because of the alleged errors of the court in refusing to compel plaintiff to elect between the cause of action on the judgment and the cause of action set forth on the certificate and the sum in checking account, which, as appellant truly asserts, was merged in the judgment.

The contention under this head is also that the causes of action were inconsistent, and therefore could not coexist or be sued upon in one action; that it was unfair to the appellant, and prejudiced its defense to the suit to permit their joinder in one complaint. Whatever may be the rule in other jurisdictions, we are satisfied that under our statutes, and the decision of our territorial court in *Willard* v. *Carrigan,* 8 Ariz. 70, 68 Pac. 538, no prejudicial error was committed in overruling the pleas and motions of the appellant making these objections. We think it was discretionary with the court to permit the plaintiff to set forth his cause of action in such diverse statements or forms thereof as would meet the possible proofs for the first time appearing on the trial, and that it does not appear that the discretion of the court was exercised in such a way as to work any substantial injury to appellant. The criticism that there was inconsistency in the causes of action joined, as made here, is applicable to the causes of action relied upon, and the joinder of which was allowed, in *Willard* v. *Carrigan, supra;* the one being on *quantum meruit,* and the other on special contract for a definite and agreed sum in money. Such causes of action were mutually exclusive, in that the plaintiff, under the facts, could not have recovered on both; the finding of the existence of one being necessarily a finding of the nonexistence of the other. And, like the case at bar,

the causes of action pleaded there arose out of the same set of facts, and were remedial only by one money judgment. We see no reason why the ruling in that case should not control in this, and therefore hold that, as it does not appear that the court abused its discretion in taking cognizance of the controversy in one action, and settling it by one judgment, no error was committed by the court in that regard.

These views of the case render it unnecessary to consider other questions urged.

For these reasons the judgment must be affirmed against appellant, and the sureties on its bonds of appeal and *supersedeas*, as provided by law.