[Civil No. 3296.   Filed November 10, 1933.]

[26 Pac. (2d) 1021.]

WELLS FARGO & COMPANY OF MEXICO, S. A., a Corporation, Appellant, v. McARTHUR BROTHERS MERCANTILE COMPANY, a Corporation, Appellee.

Messrs. Ellinwood & Ross, Mr. Wm. H. Mackay and Mr. Norman S. Hull, for Appellant.

Mr. Henderson Stockton and Mr. Emmet M. Barry, for Appellee.

McALISTER, J.—McArthur Brothers Mercantile Company, an Arizona corporation, with its principal place of business at Phoenix, brought this action against Wells Fargo & Company of Mexico, S. A., a foreign corporation, to recover $3,700, the alleged value of an armoured motor-truck which, it was averred, the latter held as bailee and failed to deliver to the plaintiff, the bailor, when requested to do so. Judgment for $1,000 in favor of the plaintiff was rendered upon the verdict of a jury and the defendant has brought the controversy here for review.

The facts out of which the case arises are substantially these: Appellee was for a number of years the distributor of Dodge Brothers automobiles and Graham Brothers trucks for the state of Arizona and in the fall of 1926 secured from the federal government of Mexico an order for a sample armoured truck. The chassis and body of the truck were purchased by appellee from two different dealers in York, Pennsylvania, and shipped to Graham Brothers at Detroit, Michigan, where they were properly put together for shipment to Arizona but Graham Brothers refused to send or forward the truck to appellee while the embargo on arms and munitions of war from the United States to Mexico then existing was in force. Hence, it became necessary that appellee procure someone whom Graham Brothers regarded as reliable to receive the car in Nogales, Arizona, and hold it there subject to the instruction of Dodge Brothers, so, on January 18, 1927, appellee, realizing appellant would fulfill this requirement,·

wired its local agent at Nogales, Arizona, Wm. H. Davey, as follows:

"Phoenix, Ariz. 506 P
"Jan. 18, 1927.

"Wm. H. Davey, West Coast Motor Co., Nogales, Ariz.

"Please have Wells Fargo wire direct to Graham Brothers, Detroit, and follow with confirmatory letter their willingness to receive and hold for Dodge Brothers instructions the Graham Brothers Sample Armoured car Please have them do this day letter today and advise us they have done so.

"McARTHUR BROTHERS."

Upon receipt of this telegram Davey called on J. J. Egan, general manager for appellant, at his office in Nogales, Sonora, Republic of Mexico, showed him the message and advised him that it would be necessary to store the truck for awhile in Nogales, Arizona. Thereupon Mr. Egan told Davey he would get someone to take care of the truck when it came and the next day, January 19, 1927, sent Graham Brothers at Detroit, Michigan, the requested telegram, which was in this language:

"Nogales, Ariz., January 19, 1927.

"Graham Brothers, Detroit, Mich.

"At request McArthur Bros. Phoenix advising you direct we will receive and hold for instructions Dodge Brothers Sample Armoured car. All expense your account.

"J. J. EGAN."

He followed the same day with a confirmatory letter worded thus:

"Wells Fargo & Company of Mexico, S. A.

"Nogales, Son., Mexico, January 19, 1927.

"Messrs. Graham Bros., Detroit, Mich.

"Dear Sir: Following is a copy of day letter sent you this date:

" 'At request McArthur Bros. Phoenix advising you direct we will receive and hold for instructions

Dodge Brothers Sample Armoured car. All expenses your account.'

"Confirming above, we understand you desire us to receive and hold this armoured car at Nogales, Arizona, for instructions from Dodge Brothers. We will be very glad to do this. There probably will be expenses for warehousing and loading and unloading, which expenses will be for your account.

"Trusting we can be of service to you in this matter, I beg to remain

"Yours truly,
"J. J. EGAN, General Manager."

The telegram and the letter were both sent from Nogales, Arizona, though dictated and written in Nogales, Sonora. Appellant took this course because it saved some eight or nine hours in time and three cents in postage; in fact, due to such savings it maintained a postoffice box in Nogales, Arizona, and used regularly both the telegraph and postal facilities of the United States in connection with any business it had in this country.

On February 9, 1927, the armoured truck arrived in Nogales, Arizona, and the agent of appellant in Nogales, Sonora, E. O. Matthews, employed in Nogales, Sonora, the Kelly Henry Transfer & Distributing Company of Nogales, Arizona, to unload the truck and store it in the warehouse of that company in Nogales, Arizona. After this had been done, Mr. Matthews notified appellee of it. The truck remained in that warehouse until July or August, 1928, when it was towed to a garage operated by J. H. Bears, where it was stored until April 10, 1929. During the afternoon of that day it was temporarily removed from this garage, supplied with water, oil and gasoline, and then returned ready for use, except for the installation of a battery. This action was taken at the request of the person who had sold the car to the Mexican government, E. M. Dice, appellee's agent, but appellant knew nothing whatever

of it. Some time after 10 P. M. that night the truck was removed from this garage and run through the patrol across the international boundary to Nogales, Mexico. Before this occurred, however, E. M. Dice in Nogales, Arizona, and Warren McArthur in Phoenix, manager of appellee, had called E. O. Matthews by telephone and requested the release of the truck to E. M. Dice, who wanted to take it early the following morning to Naco, Arizona, for delivery to the Mexican government, but he declined to permit this without written instructions from appellee. The truck had been released to appellee by Dodge Brothers, or its successor, on December 3, 1928.

During the twenty-six months the truck was in storage the warehouseman, Kelly Henry Transfer & Distributing Company, sent appellant regularly a bill for $8.50, the monthly charge for that service, and the latter transmitted the statement to appellee at Phoenix, and it in turn sent to appellant at Nogales in payment its check which was indorsed by appellant and delivered by it to the warehouseman in Nogales, Sonora.

This action was brought early in March, 1930, and on the 27th of that month a copy of the complaint and summons was delivered to J. J. Egan at Nogales, Arizona. He, as general manager of appellant, resided at Guadalajara, Mexico, but for a day or two was in Nogales, Arizona, en route to Phoenix to consult appellant's attorneys regarding this case and temporarily availing himself of the hotel facilities of that city. On May first thereafter, at 8:30 P. M., a copy of the complaint and summons was also delivered to E. O. Matthews at his home in Nogales, Arizona. Mr. Matthews lived on the Arizona side of the international boundary, but his work as agent of appellant was in Nogales, Sonora.

Soon after the service of summons appellant appeared specially and solely for the purpose of ob-

jecting to the jurisdiction of the court over its person and filed a motion to quash the service. After a full hearing this motion was denied and the case tried some time later before a jury which returned a verdict for the plaintiff in the sum of $1,000. It is the judgment entered on this verdict that appellant asks this court to set aside.

Several errors are assigned but they are grouped for discussion under fewer propositions of law. The first and principal assignment urged by appellant is that the court erred in denying its motion to quash the service of summons and in exercising jurisdiction of its person. Service was made under section 3757, Revised Code of 1928, which reads as follows:

"Service on corporations. In actions against a corporation the summons may be served on the president, secretary, or treasurer, or any director thereof; or upon its local agent, in the county in which action is brought, or upon any agent appointed for that purpose, or by leaving a copy of the same at the principal office of the company during office hours. Service may be had upon any railroad, telegraph, telephone, or express company by serving the summons on any agent of such company, who resides in or may be found in the county where the action is brought."

In obtaining service appellee proceeded upon the theory first, that since appellant was an express company, service on its agent, who resided in the county where the action was brought (or would have been brought had it not been agreed that for convenience it might be filed in Maricopa instead) or on its general manager, who was found in that county, would be a compliance with the last sentence of this paragraph and, therefore, good even though appellant was not doing business in the state; and, second, that whether valid for this reason or not, it would be good anyway because the facts disclosed that appellant was

doing business in the state and had submitted itself to the jurisdiction of its courts.

A literal construction of section 3757 does justify the view that the service was valid whether appellant was doing business in the state or not, since it was made in the county where the action was instituted on two of appellant's agents, one of whom resided there and the other having been found there temporarily. But it can hardly be said, in view of the great weight of authority to the contrary, that it was the purpose of the legislature to provide that foreign corporations could be brought within the jurisdiction of the courts of this state by the simple process of serving one of its agents who resides or happens to be found in the county where the action is brought, if that corporation had neither complied with the laws of this state relative to such corporation nor had been doing business therein. "Unless," to use the language of *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 115 N. E. 915, "a foreign corporation is engaged in business within the state, it is not brought within the state by the presence of its agents." When they enter a state merely in an individual instead of a corporate capacity they do not take the corporation with them. Under both the federal and state decisions the courts of a state can gain jurisdiction over a foreign corporation, in the absence of its consent, only by that corporation's doing business in the state in a way that warrants the inference that it has subjected itself to the jurisdiction of the courts of that state, and this rule is in no way affected by the existence in the state of a statutory provision relative to service that indicates otherwise. *St. Louis Southwestern Railway Co. of Texas* v. *Alexander*, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B 77; *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C 537; *Banco de*

*Sonora* v. *Morales,* 23 Ariz. 248, 203 Pac. 328; *Watson-Higgins Milling Co.* v. *St. Paul Milling Co.,* 256 Mich. 258, 239 N. W. 295; *Burnham Mfg. Co.* v. *Queen Stove Works, Inc.,* 214 Iowa 112, 241 N. W. 405; *Southeastern Distributing Co.* v. *Nordyke & Marmon Co.,* 159 Ga. 150, 125 S. E. 171; *Pembleton* v. *Illinois Commercial Men's Assn.,* 289 Ill. 99, 124 N. E. 355; *Kluver* v. *Middlewest Grain Co.,* 44 N. D. 210, 173 N. W. 468. In *Philadelphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710, the court said:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there."

Therefore, in making the closing sentence of section 3757 a part of the law of Arizona, it must be that the legislature had in mind only those "railroad, telegraph, telephone, or express" companies that could be constitutionally and legally made defendants in the courts of this state, since to construe it otherwise would be to give these courts a jurisdiction that under the due process clause of the Federal Constitution they could not acquire. Whether a corporation has submitted itself to the laws of a state other than that of its domicile in such a way as to be bound by service of process therein in a personal action is one of general and not local law (*Frawley Bundy & Wilcox* v. *Pennsylvania Casualty Co.,* (C. C.) 124 Fed. 259; *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100, 18 Sup. Ct. 526, 42. L. Ed. 964), and in its final analysis one of due process of law under the Constitution of the United States, and controlled by the decisions of the federal courts. *State ex rel. Ferrocarriles Nacionales De Mexico* v. *Rutledge,* (Mo. Sup.) 56 S. W. (2d) 28, 85 A. L. R. 1378; *Grant* v. *Cananea Cons. Copper Co.,* 117 App. Div. 576, 102 N. Y. Supp.

642; *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; *Pembleton* v. *Illinois Commercial Men's Assn., supra; Hall* v. *Wilder Mfg. Co.*, 316 Mo. 812, 293 S. W. 760, 52 A. L. R. 723; 14a C. J. 1372, par. 4079. In *North Wisconsin Cattle Co.* v. *Oregon Short Line R. Co.*, 105 Minn. 198, 117 N. W. 391, the court said:

"Whether such a corporation is doing business in the state is a question of jurisdiction, and in its last analysis it is one of due process of law, under the Constitution of the United States."

It is apparent, therefore, that the validity of the service depends upon the answer to the query, Was appellant doing business in this state in such a way as to submit itself to the jurisdiction of its courts? The evidence discloses that it did not comply with any of the requirements the statute makes of foreign corporations as a condition precedent to their transacting business in this state and that it owned here no real or personal property and had neither an agent for soliciting or negotiating business nor an office in which to carry on such transactions, unless the room for classifying express as hereafter described constitutes one.

It does appear, however, and these are the facts upon which appellee relies to show that it was doing business in the state, that the letter and telegram which appellant sent to Graham Brothers at Detroit, Michigan, in compliance with the request of appellee, and which resulted in the truck's being shipped to appellant at Nogales, Arizona, and there held by it as bailee for twenty-six months, were dispatched from that place; that it maintained regularly a postoffice box in Nogales, Arizona, and used both the postal and telegraph facilities of the United States in connection with shipments originating in or destined to points within or beyond the state of Arizona; that when express parcels from without Mexico arrived at Nogales,

Arizona, to be delivered to appellant in Nogales, Sonora, for shipment to points within the Republic of Mexico, appellant, pursuant to the laws of Mexico, employed a Mexican broker or custom-house agent, who had his office in Nogales, Sonora, and was duly licensed for that purpose under the laws of Mexico, to receive the express on the American side of the line in Nogales, Arizona, and arrange, classify and submit the same in his name as consignee to the custom officers of Mexico, pay the import duty thereon, move it across the international boundary line, and deliver it to appellant in Nogales, Sonora; that to aid this Mexican broker in performing these services appellant at all the times mentioned in the complaint rented from the American Railway Express Agency, Inc., in Nogales, Arizona, and regularly maintained a room adjacent to the office of the latter to which express matter transported to Nogales, Arizona, but destined for shipment by appellant to points within the Republic of Mexico, was delivered; that the same procedure was followed by the American Railway Express Company, Inc., with reference to express which arrived in Nogales, Sonora, from within the Republic of Mexico, destined to points within or beyond the United States, except that an American broker duly licensed under the laws of the United States and having an office in Nogales, Arizona, was employed to perform the same service relative to it.

It is strenuously contended by appellant that these facts do not show that it was doing business in this state in a way that subjected it to the jurisdiction of its courts. The employment of the Mexican broker to perform the acts required to transfer express across the international boundary did not, it would seem, constitute an act of business in this state, for the reason that it did not give appellant a sufficient, if any, connection in Arizona with express destined to points in Mexico. The authority of this broker,

who was duly licensed by the Mexican government and was, under the laws of that country, the only person through whom express moving in international commerce from the United States to the Republic of Mexico could be cleared, to accept the express in Nogales, Arizona, was conferred by ''an endorsed bill of lading or an endorsed invoice, or a letter . . . from the consignee or the shipper,'' which it was necessary for him to exhibit before the American Railway Express Company would surrender express to him, and in addition permission to take express through the custom-house could not be secured from the custom officials unless he showed a power-of-attorney or a letter from the consignee authorizing him to perform this service. And while express was in his possession neither the company that transported it to Nogales, Arizona, and delivered it to him there to transfer to the other side, nor the company to which he delivered it in Nogales, Sonora, for transportation to its point of destination in that country, controlled it. It was in his charge during this period, and in revising and classifying it as well as in taking it across the international boundary and through the custom-house, he looked to the regulations and laws of that country for guidance, not to the orders of the company that paid him, and in transferring it used his own means of transportation. His relation to the appellant, therefore, was that of an independent agent, much the same as that of an independent contractor; hence, appellant's employment of him for this purpose did not have the effect of projecting it into this state. *Bank of America* v. *Whitney Central National Bank*, 261 U. S. 171, 43 Sup. Ct. 311, 67 L. Ed. 594; *Creager* v. *P. F. Collier & Son Co.*, (D. C.) 36 Fed. (2d) 783; *American Tri-Ergon Corp. et al.* v. *Ton-Bild Syndikat, A. G.*, 145 Misc. 344, 260 N. Y. Supp. 139. In *Cannon Mfg. Co.* v. *Cudahy Packing Co.*, 267 U. S. 333, 45 Sup. Ct. 250, 69 L. Ed. 634,

the defendant, a foreign corporation, desired to have business transactions with persons residing in North Carolina but did not care to enter that state in its corporate capacity, and in holding that it could do this, the court, speaking through Mr. Justice BRANDEIS, said:

"It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. *Bank of America* v. *Whitney Cent. Nat. Bank*, 261 U. S. 171, 67 L. Ed. 594, 43 Sup. Ct. 311. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the Federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare *Lumiere* v. *Mae Edna Wilder, Inc.*, 261 U. S. 174, 177, 178, 67 L. Ed. 596, 600–602, 43 Sup. Ct. 312. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406, 409–411, 47 L. Ed. 1113, 1115, 1116, 23 Sup. Ct. 728," etc.

Maintaining a room in Nogales, Arizona, adjacent to the office of the American Railway Express Company for the use of the Mexican broker in revising and classifying the express before submitting it to the custom officials did not, any more than availing itself of the services of the broker, constitute doing business in this state. This was done solely for the convenience of the broker and the only possible effect it could have had was to reduce the amount appellant was compelled to pay him for his services. That a foreign corporation may with immunity from service of process maintain an office for its own soliciting agent has been held several times by the United States Supreme Court (*Green* v. *Chicago, Burlington & Quincy Ry. Co.*, 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; *Philadelphia & Reading Ry. Co.* v. *McKibbin, supra*), and this being true it follows, we

think, that it could without any more serious result to itself maintain one for the convenience of an independent agent it was compelled under the law to hire. In the latter of these two cases the court used this language:

"Even hiring an office, the employment by a for-- eign railroad of a 'district freight and passenger agent . . . to solicit and procure passengers and freight to be transported over the defendant's line,' and having under his direction 'several clerks and various traveling passenger and freight agents,' was held not to constitute 'doing business within the state.'"

The use of the postal and telegraph facilities in Nogales, Arizona, is, it occurs to us, governed by the same rule. These are wholly independent agencies open to everyone alike and their use by a foreign corporation whose operations are wholly outside this state does not constitute doing business herein to such an extent, if at all, as to warrant the conclusion that it has thereby submitted itself to the jurisdiction of this state's courts. Appellant's business, that of transporting express, is conducted entirely in the Republic of Mexico, and this is just as true of that portion of the express it handles that crosses the international boundary as it is of that that it moves wholly within the Republic of Mexico. As we have seen, it receives on the Sonora side of the line from a Mexican broker express originating in the United States destined to points in Mexico through the port of Nogales, and delivers in the same place to an American broker that which originates in Mexico destined to points in the United States through the Nogales port. Every act it performs with reference to such express takes place within that country, and the mere mailing or sending from Nogales, Arizona, instead of from Nogales, Sonora, simply as a matter of con-- venience, of letters or telegrams written at its office

in Nogales, Sonora, concerning the handling of these shipments in that country, certainly does not constitute doing business in Arizona within the meaning of its laws regulating foreign corporations, and, in our view, fails to do so to the extent that it renders appellant amenable to the process of its courts.

The principal proposition advanced by appellee to show that appellant was doing business in the state and the one which seems to have controlled the action of the superior court is that the contract which forms the basis of the action was entered into at Nogales, Arizona, and was to be performed there. It is unnecessary in our opinion to consider the correctness of this view, because, even though the contract was entered into there and its execution constituted an act of business, it was no part of appellant's regular business and in reality amounted to only one isolated transaction. It was engaged solely in doing what its name implies, transporting express, not in warehousing, except in so far as it was necessary to take care of the express parcels it transported, and its undertaking in this instance was to receive and hold in Nogales, Arizona, subject to the instruction of Dodge Brothers, the armoured truck, not for the purpose of later transporting it as express in Mexico but, as we view the facts, purely as an accommodation to appellee. Nowhere in the record does it appear that when appellant agreed to hold the truck there it understood that it would be compensated for this service or that it would later handle it as express, but upon the contrary that it had in mind that its connection therewith, which was gratuitous, would end in Nogales, Arizona. Due to its size and weight the truck was brought to Nogales as freight and it was undoubtedly appellee's purpose at that time to deliver it to the Mexican government by simply driving it across the international boundary on its own power as soon as

the embargo on arms to that country was raised by the United States government This clearly discloses that the agreement to receive and hold the truck as well as the manner in which it was executed formed no part of the business for which appellant was organized or that it regularly followed, nor, since there was no purpose ever itself to transport it as express, was it even incidental thereto. This being true, appellant's act in agreeing to and holding the truck in the manner shown was not, if doing business at all within this state, doing it in such a way as to submit itself to the jurisdiction of the courts of the state, for "doing business within this state," to use the language of the court in *Booz* v. *Texas & Pacific Ry. Co.,* 250 Ill. 376, 95 N. E. 460, "means the transaction of the ordinary business in which the corporation is engaged, by the exercise of some of its charter powers." *Knapp* v. *Bullock Tractor Co.,* (D. C.) 242 Fed. 543; *Doe et al.* v. *Springfield Boiler & Mfg. Co.,* (C. C. A.) 104 Fed. 684; *Clark* v. *Kansas Petroleum Co.,* 144 Mo. App. 182, 129 S. W. 466; 12 R. C. L. 71, par. 49.

The transaction was not only one outside of appellant's regular business and perhaps *ultra vires,* but the record discloses that it is the first and only one of its kind appellant has ever become a party to. Neither before nor since has it agreed to receive and hold in Nogales, Arizona, or elsewhere in the United States, for appellee, or anyone else, merchandise of any character. This being true, another characteristic of doing business in the state, that is, that it must not consist of one isolated, casual transaction, but have some continuity, is lacking. "A continuous course of business, as distinguished from a single transaction," according to 14A C. J. 1373, par. 4080, "conducted by authorized agents within the state, constitutes a doing of business so that the corpora-

tion may be fairly said to be present in the state and amenable to the process of the courts." Absolute continuity, of course, is not required, but the business done must be continuous in the sense that it is distinguishable from a casual, isolated transaction, which alone does not constitute doing business in the state. 14A C. J. 1373, par. 4080. In *Knapp v. Bullock Tractor Co., supra,* the court said:

" . . . upon reason and authority, it may be said that if the corporation is engaged in a more or less continuous effort, not merely casual, sporadic, or isolated, to conduct and carry on within the state some part of the business in which it is usually and generally engaged, it may be said with due and becoming propriety to be 'doing business' within such state."

*Martin v. Bankers' Trust Co.,* 18 Ariz. 55, 156 Pac. 87, Ann. Cas. 1918E 1240; *Monaghan & Murphy Bank v. Davis,* 27 Ariz. 532, 234 Pac. 818; *Babbitt v. Field,* 6 Ariz. 6, 52 Pac. 775; *Louis F. Dow Co. v. First Nat. Bank,* 153 Minn. 19, 189 N. W. 653. The fact that the truck remained in the warehouse for twenty-six months and that the storage charge therefor was paid each month during this period by appellee through appellant did not make the undertaking to receive and hold the truck other than a single transaction.

While it is true that activities insufficient to make out the transaction of business under statutes prescribing the conditions under which a foreign corporation may do business in the state may be sufficient to render it amenable to the process of its courts, we are clearly of the view that the acts relied on in this case to bring appellant within the state and, hence, within the jurisdiction of its courts do not warrant the conclusion that they have done so. This being true the order of the court denying the motion of appellant to quash the service of summons was error.

The judgment of the court is, therefore, reversed and the case remanded to the trial court, with instruction to dismiss the complaint.

ROSS, C. J., and RODGERS, Superior Judge, concur.

LOCKWOOD, J., being ill, the Honorable G. A. RODGERS, Judge of the Superior Court of Maricopa County, was called to sit in his place.